Bell, J.,
dissenting. For the second time in eight years, the same question involving the same statute is before this court. That the question has been presented to us a second time is less properly attributable to judicial insubordination than to the ambiguity of both the statute and this court’s original interpretation thereof.
If this court in writing the syllabus in the case of In re Estate of Marrs, 158 Ohio St., 95, had, after emphasizing, as it did, the word, “or,” in the first paragraph, merely said, in the second paragraph, that “where upon hearing of the petition for authority to file a belated claim the evidence discloses that claimant actually knew of the decedent’s death and his place of residence, * * * the court is chargeable with no error or abuse of discretion -in denying claimant authority to present his claim,” 'this case probably would not have arisen. In my opinion, the instant decision solidifies that interpretation of the statute and completely writes out of it the words, “or the appointment of the executor or administrator.”
The ambiguity, and an understandable confusion, resulted from the use of the words, “and that in the exercise of reasonable diligence the claimant could have learned of the appointment of an administrator and thereafter had a fair opportunity *477 to present his claim within the four months prescribed,” in the second paragraph of the syllabus in the Marrs case.
In that case, no attempt was made to ascertain whether an administrator or executor had been appointed. And the Probate Court refused to allow the claim to be filed. This court said that was not error. In the instant case, however, the Probate Court of necessity must have found that the claimant did act with reasonable diligence, and it therefore allowed the claim to be filed. The majority of this court now says that was error.
I am in complete accord with the following analysis by Judge Zimmerman in his opinion in the Marrs case, an analysis which apparently has now been abandoned by the majority herein:
“* * * we are of the opinion that the General Assembly used the word, ‘or,’ in Section 10509-134, General Code, advisedly and deliberately, so that, when one has a claim against a decedent and has actual notice of his death, he is at once put upon inquiry as to the appointment of a fiduciary and if he learns of such appointment, or in the exercise of reasonable diligence could learn of the same, he must file his claim within the specified four-month period.” (Emphasis added.)
Whether one uses reasonable diligence in a situation where he is required to do so is a question of fact. In this instance, the trier of the facts was the Probate Court, and it found that the claimant had used reasonable diligence.
And an examination of the record of the hearing before the Probate Court reveals an ample basis on which to support that finding. There is no dispute that the claimant knew of the death of decedent; she was killed instantly in an accident with claimant’s bus. Claimant knew also that decedent lived on Oak Street in Chagrin Falls. Claimant also had been advised of the necessity of filing a claim with a fiduciary within four months; it had been so advised by its attorney. It, therefore, instructed its attorney in Cleveland to make a search and maintain a check of the Cuyahoga County records for the appointment of a fiduciary, on the mistaken belief (apparently concurred in by the attorney) that the Oak Street address in Chagrin Falls was in Cuyahoga County.
*478 The Probate Court had before it evidence that, within a period of time shortly after the accident until some six months after the appointment of an administrator, the claimant had been negotiating with the insurance carrier of the decedent for settlement of its claim against the decedent. The following excerpts from the record are pertinent: (The only witnesses were those of the claimant.)
“A. Our conversation, at the first conversation — in these conversations, by the way, both Mr. Fchlner and myself had these conversations with Mr. Fontana [claims adjuster for decedent’s insurer].
“The first conversation was in regard to what steps should we take, or were we mutually to take, to settle the damages to our coach.
“He advised us—
“The Court: Did you make a claim to the insurance company for damage to the coach?
“The Witness: Yes. He advised us to prepare an estimate of our damages and that he would send an appraiser to examine the coach for his company. * # *
U* * #
“The Court: Mr. Fontana*is not counsel for the administrator of the decedent’s estate, is he?
“Mr. Thrasher: Not of record, Your Honor.
“The Court: Did you have any knowledge that Mr. Fontana was working towards the administration of the decedent’s estate, or had anything to do with the making of the application for letters of administration?
“The Witness: No. We were not aware of the fact that there was an estate until the 15th of last month, and all of our dealings * * * were those of our company with their insurance company, because they were the ones that, naturally, we went to for damages.
“They were the insurance company insuring her car.
“The Court: Did Mr. Fontana give you any reason for holding off on this property damage claim until the personal injury claims were settled?
“The Witness: He told us they would not consider settling our claim until such a time as those personal injuries had been settled.
*479 “The Court: Did he give you a reason for that?
“The Witness: No, he did not give a reason. I’m aware of the fact that that is customary in insurance cases, and so while we kept after them, why, we were not completely impatient because that’s the way it has happened in the past, in this manner.
“They will not settle their property damage claims until such time as the personal injuries have been handled.
í Í # * #
“The Witness: * * * Mr. Schultz [claimant’s insurance agent] called and informed me that he had learned that all of the personal injuries had now been settled by the Zurich American Insurance Company.
“Consequently, Mr. Schultz called Mr. Fontana, requesting that now that the personal injuries were all settled, that now we could settle the property damage, and at that time Mr. Fontana informed Mr. Schultz that an estate had been filed and that consequently — that we had not placed a claim within that estate within the proper length of time, and consequently the insurance company, Zurich American, had no reason — or did not owe us any money.”
In the light of the fact that the application for the appointment of an admininstrator lists the assets of the estate as $150 and recites that ‘ ‘ other assets may be coming into estate, possible wrongful death action, possible claims against estate,” the above-quoted testimony becomes more pertinent and makes the following colloquy between counsel at the hearing more illuminating for what was not said than for what was:
“Mr. Thrasher: I would like to ask Mr. Hesser who employed him to come here today. Would you care to tell us, Mr. Hesser?
“Mr. Hesser: I think that’s immaterial.
“The Court: Mr. Hesser told us he was the attorney for the administrator.
“Mr. Hesser: That is correct. My law firm represents the administrator.
“Mr. Thrasher: Does your law firm also represent the Zurich American Insurance Company?
“Mr. Hesser: I object to this line of questioning.
*480 “The Oourt: You need not answer unless you care to.”
In my opinión, the Probate Court was justified in finding that the claimant had used reasonable diligence to determine whether an appointment had been made and, in the light of the whole factual pattern, was justified in permitting the claim to be filed.
Matthias and Herbert, JJ., concur in the foregoing dissenting opinion.